IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

WILLIAM HOGGARD,

Plaintiff,

v.                                                                    No. CIV 09-587 BB/LFG

The CITY OF ARTESIA, a municipal
corporation; and CHIEF OF POLICE DON
RALEY, individually and in his official
capacity,

Defendants.


MEMORANDUM OPINION
ON SUMMARY JUDGMENT


THIS MATTER is before the Court on *Defendants' Motion for Summary Judgment on Count I and to Dismiss Chief Raley on all Counts* [doc. 23]. Having reviewed all submissions, the motion will be Granted in Part and Denied in Part.

### *Legal Standard*

Summary judgment is appropriate if there is no genuine issue about any material fact and if the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). It is the moving party's burden to show that there is no genuine issue of material fact, whether as to jurisdiction or the merits of the claims, even if the moving party does not have the ultimate burden at trial. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 982 (10th Cir. 2002). In response, the nonmoving party must come forward with

"specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).   The nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)).   When viewing the evidence, the Court must draw reasonable inferences in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587.

## *Facts*

Plaintiff William Hoggard was hired by the City of Artesia Police Department ("APD") as a police officer on July 3, 2006.  He was promoted by the City Council of Artesia to the position of Deputy Chief for the APD on or about August 16, 2006.

On September 15-16, 2007, Artesia Police Chief Don Raley was out of town.  On that weekend Plaintiff had plans to attend a motorcycle rally in Ruidoso but his motorcycle fell over on him.  He then consumed alcohol and took prescription drugs for pain.  He also talked to two local officers who were alarmed and sought medical help for Plaintiff.  When he returned, Chief Raley ordered Plaintiff to submit to a fitness-for-duty exam.  Two fitness-for-duty evaluations stated Plaintiff could be released to work with certain accommodations.

On or about December 7, 2007, Chief Raley instigated an internal affairs investigation of Plaintiff, regarding not only the events that took place on September 15,

2

2007, but other incidents including the allegation that Plaintiff had an inappropriate relationship with a female high school summer intern.  The high school student was the daughter of an Artesia City Councilor.

Following the internal affairs investigation, Chief Raley recommended Plaintiff's employment be terminated.  On April 1, 2008, Chief Raley sent Plaintiff his letter recommending Plaintiff's termination and stated the basis for that decision. The City of Artesia (the "City") Personnel Ordinance 615, sets forth procedures for disciplinary actions.

(a) Departments head are authorized to recommend that an employee be terminated ....  The mayor may suspend the employee with or without pay, until a pretermination ... hearing is held.  § 1-6-11(B).

(b) The human resources director will then schedule a pretermination hearing for the employee within ten (10) working days of the written notice by the mayor to terminate the employee.  *Id.* at § 1-6-11(C)(1)(a).  The employee must be delivered a written notice of intent to terminate, which includes the specific incidents that indicate just cause and/or factors relied upon by the department head.  *Id.* at § 1-6-11(C)(1)(a)(1)-(5).

(c) The pretermination hearing is between the employee and the employee's supervisor or department head, with the human resources director hearing both sides.  *Id.* at § 1-6-11(C)(2).  "This hearing is to allow the employee to respond to the charges

and offer explanations and/or present witnesses in mitigation of the proposed termination." *Id.* After the pretermination hearing, the human resources director will issue a written decision to the employee on the proposed action to be taken. *Id.* at § 1-6-11(C)(3).

(d) The employee then has the right to appeal any disciplinary action resulting from the pretermination hearing. *Id.* at § 1-6-11(C)(3)(b)(7). If the employee chooses to appeal, the mayor will schedule and conduct a termination hearing before the Artesia City Council within ten (10) working days after the pretermination hearing. *Id.* at § 1-6-11(E)(1)(a).

After Mayor Phil Burch authorized termination of Plaintiff's employment, Bill Thalman, Human Resources Director for the City, scheduled a pretermination hearing for April 22, 2008. Plaintiff attended the pretermination hearing, following which Mr. Thalman upheld the proposed termination of employment. A termination hearing before the Artesia City Council was scheduled on May 22, 2008.

During the hearing, Plaintiff's attorney requested, among other things, that the City Attorney: (1) procure the attendance of certain witnesses; (2) direct the City's human resources director to answer questions regarding whether he perceived Plaintiff as disabled under the Americans with Disabilities Act ("ADA"); and (3) allow Plaintiff's attorney to question each member of the City Council regarding any bias

4

toward Plaintiff because of the allegations involving the teenaged daughter of a former City Councilor.

The City Attorney responded to these requests by informing Plaintiff's counsel that the City had no subpoena power, and that it was Plaintiff's responsibility of procuring witnesses for Plaintiff's defense. Furthermore, the City Attorney noted that it would be improper to question any of the councilmen or otherwise make them witnesses at the proceeding. Lastly, the City Attorney told Plaintiff and his attorney that any contention which they may have of violation of the ADA was irrelevant to the issues before the Council.

At the hearing, the City Attorney called six witnesses and Plaintiff's attorney was given the opportunity to cross-examine each one. Although the City Attorney directed Human Rights Director Thalman not to answer certain questions regarding the ADA, he indicated he would next call Chief Raley and then Plaintiff's attorney could then present his case. However, due to the late hour, the Mayor indicated it would be necessary to continue the hearing, and set it for July 1, 2008. Plaintiff and his counsel informed the City Attorney by letter that they would not be attending the continuance of Plaintiff's termination hearing, stating "[h]aving concluded Deputy Chief Hoggard cannot and has not obtained a fair hearing due to your obstreperous conduct and flawed legal advise (sic), he respectfully has elected to stand on the record and not present a separate defense."

On July 1, 2008, the City Council acknowledged Plaintiff's absence and continued with his termination hearing. On July 1, 2008, the Council unanimously voted (8-0) to terminate Plaintiff's employment, effective as of that date. Plaintiff filed this suit on June 15, 2009. In Count I, he alleges that his procedural and substantive due process rights were violated based on alleged improper actions of the City Attorney and a biased tribunal. Under Counts II and III, Plaintiff seeks to hold Chief Raley individually and personally liable under the ADA and the Age Discrimination in Employment Act ("ADEA").

### *Discussion*

### I.    *Individual Claims Against Chief Raley*

Defendants moved for summary judgment arguing that Plaintiff "cannot sue Defendant Chief Raley in his personal capacity under the Americans with Disabilities Act or the Age Discrimination in Employment Act" (Defs' Mot. at 2), and Plaintiff concedes this is legally correct (Pl's Mem at 3). *See Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999). Summary judgment will be granted.

### II.    *Chief Raley is Entitled to Qualified Immunity*

Qualified immunity strikes a balance between compensating those injured by official conduct and protecting the government's authority to perform necessary functions. *Wyatt v. Cole*, 504 U.S. 158, 166 (1992). "Under the qualified immunity doctrine, 'government officials performing discretionary functions, generally are

6

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The immunity is an "immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Once a defendant asserts a defense of qualified immunity, a plaintiff must show that (1) he has "asserted a violation of a constitutional or statutory right"; and (2) "that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated the right." *Latta v. Keryte*, 118 F.3d 693, 697 (10th Cir. 1997) (citations and internal quotations omitted); *see also Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  "[Q]ualified immunity is proper when the record plainly demonstrates no constitutional right has been violated, or that the allegations do not offend clearly established law." *Riggins*, 575 F.3d at 1107.

Plaintiff admits he "had suffered significant medical and emotional problems during his employment with the City of Artesia."  (Compl. ¶ 68).  As a result, Chief Raley sent Plaintiff to two fitness-for-duty exams where he was "found fit for duty with certain limitations and recommendations including medication monitoring and psychological counseling."  (Compl. ¶ 69).  However, Plaintiff alleges that "[a]fter City of Artesia received a return to duty release for Hoggard to return to work with limitations [the City] instituted an internal affairs investigation to pretextually find an

7

independent basis to terminate Hoggard s (sic) employment without directly violating Hoggard s (sic) constitutional rights under ADEA and ADA." (Compl. ¶ 71). Defendants respond that "[p]laintiff has waived his right to bring a Section 1983 action against Defendants in federal court and thus cannot establish a violation of his constitutional rights."

Initially it must be noted that Plaintiff has no "constitutional" rights under ADEA and ADA. *See, e.g., Izquierdo Prieto v. Mercado Rosa*, 894 F.2d 467, 469 (1st Cir. 1990) (ADEA preempts § 1983 equal protection clause); *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 760 (5th Cir. 1997) (same based on specific facts). Although somewhat unclear, it appears Plaintiff is actually arguing that Chief Raley used the internal investigation process as a pretext to deprive Plaintiff of his due process rights by terminating Plaintiff. This argument ignores the events intervening between Chief Raley's termination recommendation and Plaintiff's ultimate termination. Chief Raley made his recommendation to the Mayor who then recommended termination to City Human Resources Director Thalman. Pursuant to Ordinance 615, Thalman held a pretermination hearing in which Plaintiff participated. Based on the evidence at the hearing, the Human Resources Director found a basis for termination and the matter was examined at an evidentiary hearing before the City Council. Not only did Chief Raley lack the authority to terminate Plaintiff, his alleged pretextual instigation of an internal affairs investigation was three steps removed from Plaintiff's termination.

8

"The notification of a decision to terminate at a future date along with the reasons for termination, followed by a three-step process designed to give several layers of review, does not offend clearly established law." *Riggins*, 572 F.3d at 1111.  No matter how violative of federal law a recommendation to terminate cannot itself be the basis of a § 1983 action unless the recommendation was the direct cause of the termination. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601, 605 (5th Cir. 2001).

### III.    Plaintiff did not Waive his Substantive Due Process Bias Challenge

Defendants argue that "[p]laintiff waived his claims for a violation of procedural and substantive due process by failing to attend the July 1, 2008 continuation of his termination hearing." (Defs' Mot. & Mem. at 1).  One of the allegations which was the basis for Defendants' recommended termination was his flirtations with Kaiser's teenage daughter and Kaiser had been quoted during the internal affairs investigation as saying, "I don't, can't speak for the whole council I don't ever intend to put him back in uniform in Artesia, New Mexico ever for any reason because of the things that happened in the past."  (Ex. 6 attached to P's Resp.).  Potential Council bias was therefore clearly an issue.

During the first hearing, defense counsel attempted to question the Artesia City Councilors as to what conversations they may have had with former Councilor Kaiser. This attempt was thwarted by the City Attorney.  Defense counsel then wrote the City Attorney indicating that at the continuation of the hearing he would call former

councilman Kaiser and his daughter and "we will also ask each sitting councilman to find out what they knew, when they knew it, and whether it was based on their participation." The City Attorney again ruled that since the Councilors were the ultimate fact finders it would be inappropriate to allow them to be questioned. Defense counsel then indicated if he could not challenge the bias of the Council he would not participate further in the hearing. After hearing the remainder of the City Attorney's evidence, and in Defendant's absence the Council voted to affirm Plaintiff's termination.

Impartiality of the adjudicatory tribunal is an essential element of due process. *Riggins*, 572 F.3d at 1112. While Councilor Kaiser had gone off the City Council prior to the vote on Plaintiff's termination, he was on the Council when he said, "I don't ever, ever intend to put him back in uniform in Artesia, New Mexico for any reason." Defendant was denied the opportunity to question the remaining Councilors about their exposure to this or similar statements or their relationship to Kaiser. When members of a fact finding panel are subjected to extraneous information, an investigation into the effect of such information is normally appropriate. *United States v. Scull*, 321 F.3d 1270, 2380 (10th Cir. 2003); *United States v. Humphrey*, 208 F.3d 1190, 1199-200 (10th Cir. 2000).

The Tenth Circuit faced an analogous situation in *McClure v. Independent School District No. 16*, 228 F.3d 1205 (10th Cir. 2000). In that case, McClure, a teacher with

10

several years in the district, was given a $10,000 bonus for obtaining an Impact Aid Grant of over $1,000,000 for the district.  The school board subsequently began to question the bonus and the district superintendent resigned.  Shortly after his arrival, the new superintendent gave McClure notice of cause for dismissal allegedly unrelated to the bonus.   Two of the board members were quoted as saying in private conversations with the prior superintendent that they wanted McClure gone.  McClure attempted to challenge the board on the basis of bias but, as here, the board attorney stated they were the only authorized fact finders.  The district court granted the school board members qualified immunity.  The Tenth Circuit reversed finding Ms. McClure had raised a legitimate fact issue on bias "thus denying her the procedural due process right to an impartial tribunal."  228 F.3d at 1214; *see also Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 749 (10th Cir. 1991); *Staton v. Mayes*, 552 F.2d 908, 913-14 (10th Cir. 1977).

Plaintiff is therefore entitled to discovery on the potential bias of the Artesia City Council.  *Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1370 (Fed. Cir. 2004); *Bird v. Bland County Sch. Bd.*, 2000WL159317 (4th Cir. 2000).  Qualified immunity is thus not appropriate on this record.

BRUCE D. BLACK
United States District Judge